Chief Justice Bibb
delivered the Opinion of the Court.
ON the 9th of August, 1788, a grant issued to Jphn Craig, for 1000 acres of land, on the Ohio and Little Sandy, which includes the town since laid off, called Greenupsburg.
On the seventh of February, 1813, John Craig, by his power of attorney to Lewis Craig, jr. his son, (recorded on the same day, by his acknowledgment in the general court office,) gave him full power, amongst other things, to sell and convey his real estate to which he was entitled in law or equity, “reserving the claim of James Hughes, attorney at *226 law, founded on articles 'of agreement entered into between the said James Hughes and myself, the 27th of September, 1803, and memorandum at the foot of said agreement, by which the said Hughes is entitled to a proportion of my lands, which pro» portion I do not hereby givcthe said Lewis Craig, jr. power to sell.”
Deed of conveyance by Lewis Craig, as attorney for John, to Rawlins and Hobbs.
Hobbs’ 'deed to Rawlips.
Rawlins’ deed to Tim berlake.
Tímberlaké’s bill for .respis» sion.
Allegations of the bill.
On the 17th of September, 1815, by virtue of this power, Lewis Craig executed a deed, in the name of John Craig, to Thomas Rawlins and Benedick Hobbs, or lots, No. 62, 63, 64 and 65, in the town of Greenupsburg, with general warranty for himself and his heirs, against the claim oí all persons.
' On the 5th of September, 1816, Hobbs. conveyed the same lots to Rawlins by deed, with waranty against himself and his heirs, but not against the claim of any other person.
On the 28th April, 1817, Rawlins sold and conveyed with general warranty, lots 62, 63 and 64, to Oba S. Timberlake for ‡1300, whereof he paid ‡560, and gave his notes for ‡280 each, payable one at nine months, one on the 28th of May, 1818, the third on the 28th of September, 1818, on part of these lots were valuable buildings, and Rawlins put Timberlake into posession.
In November, 1818, Timberlake exhibited his bill against Rawlins, and against Hobbs and Bradshaw, the assignees of said notes, for injunction against the judgments at law on the notes, and against Lewis Craig, for a discovery of his title, and if the title should not appear sufficient, then for a rescission of the contract, &c.
By this bill, it is acknowledged that the complainant knew of doubts and difficulties as to the claims of the land on which the said town had been laid out, but that Rawlins being then in good circumstances, to every appearance, the complainant “felt himself tolerably secure in the covenant of general warranty,” “and did not exercise all the exertions, which possibly might have been in his power to investigate, and inform himself of the merits of the several conflicting claims set up to *227 said land by different persons.” And that Rawlins has since become insolvent.
Amended 1
Supplement» al
Answers.-
He charges that Lewis Craig claimed the whole tract patented to John Craig, and from the representations of said Craig, be was induced to believe Rawlins, who had purchased from Lewis Craig, had a good title; he alleges that Lewis has only a child’s part, that there are many heirs of John Craig, who is dead, and that Lewis has sold so many lots that his share will not cover all his sales.
That Johnson’s heirs under Craig’s patent, claim one half thereof, and James Hughes’ heirs claim a fourth of John Craig’s half, and refers for evidence of their claims, to the agreement and papers filed in the Greenup circuit, by James Hughes vs. Craig’s heirs, Johnson’s heirs and others for a division, there pending and revived by Hughes’ heirs, “so far as they are proper and applicable.”
He charges that Lewis Craig’s interest is small and inconsiderable, and that Lewis Craig is insolvent or nearly so.
In 1820, April, the complainant by an amended bill, charges that by a division made under a decree in the suit Hughes’ heirs vs. Johnson’s heirs, &c. lot 64, has been assigned to Johnson’s heirs, and it is uncertain whether the other lots will be held under the claim of Lewis Craig.
July 1822, by a supplemental bill, the complainant charges that Wade Mosby and the heirs o,f Little-berry Mosby had ‘instituted a suit against him and. various others, in the court of the United States, for the seventh circuit and Kentucky District, upon a patent younger than Craig’s, setting up an entry as valid, also younger than Craig’s, as appears by a copy of the proceedings, (with the bill, answers, exhibits and all the title papers of the defendants,) so far as they had progressed.
The answers of the defendants, set fortlrtheirth tie under the patent of John Craig, tfie power of attorney to Lewis Craig, and the deed by him in the name of John Craig, by Lewis Craih his attor- *228 nev; they deny the right of Robert Johnson’s heirs, and state why that claim cannot avail; that Johnson was but a trustee, with power to sell, to pay the debts of John Craig; that the trust by length of time, without sale of this land, ought to be considered as extinct and satisfed; and that the only claim of Robert Johnson, or of his heirs, is by a purchase mads by himself and a co-trustee, of one moiety, and that the pretended purchase is a nullity; they deny the force or valdiity of any adverse claims; they assert that Timberlake resided in the town, was, before this purchase from Rawlins, a purchaser of various other lots, from Lewis Craig, as the attorney of John Craig, that he knew all the difficulties in the title, and consented to purchase with those difficulties before his eyes, to take the warranty and rely upon it, and that he was let into possession of the lots with valuable improvements, that he has so remained, and has not been evicted, that when he purchased, the suit by Hughes wras pending, and that he had knowledge in fact of it, and of the nature of the c laim, and that there is land enough to satisfy Hughes’ heirs, without assigning any of these lots to them; that lot 64, is unimproved; and they insist that the complainant should be left fce seek his recourse, if ever he shall be evicted.
Complainant’s answers to defendant’s interrogatories.
Decree of the circuit court.
By the answer of the complainant to interrogatories put by the defendants, and by the depositions, it appears that the complainant was apprised of the contentions between the claimants under the paient of John Craig; that he lived in the town where the suit between Hughes’heirs and Johnson’s heirs and: Craig was pending; that he had conversed about the conflicting claims, and that he had purchased of Lewis Craig, as attorney for John Craig, other lots in the town, in April 1814, and in June, 1815.
Upon hearing, the court decreed the contract to be rescinded, made the injunction perpetual, and after deducting the refcts, decreed the balance of the purchase money received by Rawlins to be refunded, and that the lots he sold, or so much thereof should be necessary to pay such sum as by the terms of the decree was due to complainant.
Case briefly stated.
Where complainant shews a proper case for relief, on the ground of an adversary claim in litigation in another court, what shall be the course' of the cause?
Sn this contract there was neither suppressio veri, nor suggestio falá; no fraud, artifice or unfair dealing, or deceit is charged. But with a full knowledge of difficulties and contentions, with a suit then depending and known, the record of which was in the very town in which complainant lived, and holding himself other lots, by purchase from Lewis Craig, as agent for John Craig, under the same power through which Rawlins derived his title, Tim-berlake made the purchase, in April, 1817, accepted a deed with warranty, was let into possession and retained it in October, 1824, when the final decree was pronounced.
According to the bill, arid exhibits, it is clear that the title of John Craig to the land was the elder; he alleges conveyances by John Craig for part, which are not produced, but according to the admissions of the bill, John Craig’s heirs, Hughes’ heirs and Johnson’s heirs are co-tenants. The bill erroneously supposes Rawlins’ title derived by deed from Lewis Craig in his own . right, and estimates the part of Lewis Craig, as one of the children and heirs of John Craig, to be small, not sufficient to secure all the sales by Lewis Craig. But that mistake is corrected by the muniments exhibited on the part of the defendants.
Although Mosby’s suit has been instituted since the deed to Timberlake, yet that conflicting claim is not asserted by the complainant to have been unknown at the time of the contract, but is admitted to have been known to, him. Besides from the staleness of the claim, as assesrted in the bill, the entry of Mosby being made in 1782, from the very-great number of years elapsed after the date of Craig’s patent, before Mosby filed his bill, a period of upwards of thirty-five years, without any satisfactory excuse for the delay; from the great length of adversé possession asserted by tbe defendants holding under John Craig’s elder grant, and elder entry, and by Timberlake himself as one of those defendants, and from the equivocal language of the entry itself, which Mosbys have set up in a court of equity, after a sleep of forty years or more; a court *230 of equity cannot well give into the idea that Tim« berlake has any just cause of apprehension front that claim. It is true that the Greenup circuit court ought not collaterally and incidentally to have tried the merits and demerits of Mosby’s claim and Craig’s patent; neither ought that court to have required Timberlake, to have brought the parties before the Greenup circuit, to litigate the claim. Because the court of the United States had competent jurisdiction, and having taken cognizance of the 'cause, that tribunal must decide, if the complainant had laid a sufficient foundation for relief, because of unknown and unexpected dangerous conflicting claims discovered, and put in suit against him since his purchase, the chancellor might properly have retained this case, until the decisions in the Federal Court', and in the Greenup circuit court, unless the defendants would consent to have the contract rescinded.
Where pm-chaser had] full notice of the adversary claims, he cannot have rescission because the warrantor becomes insolvent, and he fears a loss, of the land.
But Timberlake has not laid the foundation for the interposition of a court of equity in that way, between himself and Rawlins. Timberlake had purchased other lots from John Craig, through his agent Lewis Craig, three years before he purchased of Rawlings; Timberlake was led by the power of attorney, under which Lewis Craig acted, as the attorney of John Craig, to a notice of James Hughes’ interest, he had notice in fact of that interest recognized in the power of attorney, and reserved from sale by the attorney, he erected valuable improvements, he had notice in fact of the claim set up by Robert Johnson; a suit was actually brought and pending between Hughes, John Craig, and Robert Johnson’s heirs, to settle their interests and for a division, pendente lite, he purchased of Rawlins, who also claimed under John Craig, and Under the same power of attorney, he had notice also before his purchase of Rawlins of the conflicting survey and patent of Mosby, under colour of his entry of 5000 acres. With this knowledge of the difficulties and embarrassments, lie consents to make the purchase of Rawlins, to accept Rawlins’ warranty, and was let into possession of a property which he acknowledges he rented for one hundred dollars per year. *231 Helias not been evicted. There was no fraud, no concealment, no deceit, no representation by Raw-lins to induce him to purchase; but on the contrary he eagerly sought the bargain and prevented Raw-lins, (by a claim of a promise, that he should have the refusal,) from selling to Stratton. The only change which has occurred to alter the condition of Timberlake, is the after insolvency of Rawlins, his immediate warrantor. But there is yet no eviction; he has enjoyed the buildings and ground for seven years, between his purchase and the hearing of this cause; he is in confessedly by his own bill, as tenant in common with Hughes, and Johnson’s heirs; he is in under those who made the improvements on the part sold by Craig, and whether equality of division will requjre that he shall surrender any portion of the improvements, or any portion of what he bought cannot be discerned by any lights which are admitted into this case.
■Where apart of the land conveyed with warranty is lost, tho purchaser may have compensation by injunction against ajudgment for balance of the purchase money, the war-rantor being insolvent, but not a rescission of the contract.
By an amended bill, of April, 1820, the complainant asserts, that in the division made by the commissioners under decree of the Greenup circuit court, between .Hughes’ heirs, Craig’s heirs, and Johnson’s heirs, lot No. 64, has been assigned to Johnson’s heirs, “and it yet remains to be ascertained and determined whether any of the others will be held under the claim of Lewis.” From this it is to be taken as true, as against the complainant, that 62 and 63, were in that division assigned to the heirs of John Craig; he does not assert that they Were assigned to the heirs of Hughes. Haying set oqt in his original bill, with the supposition that Lewis Craig was the vendor, instead of John Craig by his attorney Lewis, and having stated that John had many children, so that Lewis’ share as co-heir would be small; he carries that mistake throughout, and here again alludes to it, in defiance of the answers and deed exhibited, and power of attorney, and in defiance of his own titles from John Craig, by his attorney Lewis Craig. He does not pretend to say that lot 64 is an improved lot; he says it is one of the same block; the value of that lot he does not state, he does not pretend an eviction from that or any; but by thus alleging the loss of *232 that-in this way, without showing the final decreé., he asks to rescind the contract.
Purchaser in -such case huving had adversary^6 ciaim before his purchase, cannot have tion, and the oause delayed till the g¿¡“s^ryr¡ ecfi^anothsp court,
*232 Admitting lot 64 was lost, it could not be ground rescinding the contract; it would entitle the vendee to recourse upon his covenant of warranty. The contract on the part of Rawlins was executed; there Js nothing whereon to ground a rescission of the contract; because a loss, if it shall be, is within the very scope and view of the parties in introducing the warranty against the claims which were known to exist, it is not by a new and unexpected discov» ery of a hidden title or claim, but a consequence of what was known and intended to be embraced by the covenant itself.' If the insolvency of Raw-lins is to be a ground for equity to interfere, still the chancellor ought not to go farther than to the extent to which a court of law would do, in assessing' damages for the part lost; for rescinding the contract in this case there is no foundation; the bill lays none; it charges nothing whereon to base such, a decree; it acknowledges the difficulties in the title were foreseen; the answers, poofs and complainant’s answer to interrogatories, put it past doubt that the contract was fair, and the warranty was looked to as an equivalent for known embarrassments of title. If equity could interfere in such case, by reason of the insolvency of the warrantor, to arrest the payment of the purchase money, or any part of it, it would be only by clear evidence of eviction, or undoubted defect of title, so as to show the cove-' nant of warranty broken; and by stopping payment of so much of the purchase money as was equal to. the damages incurred by the breach. " -
Under the circumstances of this case, there is no co^or f°r rescinding the contract. This"is not the case of a contract executory; but of a contract exe-euted by the vendor. The complainant had notice difficulties in the title, at the time he accepted the deed. Upon what principle of equity could the chancellor interfere to stop the purchase money, ilst the purchaser is in full enioyment of his purchase; receiving rents and profits, using the buildings and grounds, when the title is precisely as the *233 parties knew and contemplated at the sale and purchase? Would it accord with.equity or reciprocity, to help the purchaser keep the price, and the tenements purchased, by tying up the purchaser to wait the issue of a suit pending, an.d known, and within the contemplation of the parties, when the one made, and the other accepted, the covenant of warranty? When Timberlake bought, he knew that Hughes was a co-tenant; the power of attorney, under which he had bought of Craig, other lots, and under which Rawlins also derived his claim to lots 62, 63 and 64, explained that. He bought trusting that the lots would fall to Craig in a division; if not, then to his warranty. So far, then, as the complaint of Timberlake is founded on the difficulties and mere pendency of a suit by adverse claimants, the court ought not to interfere, nor rescind the contract. The cases of Bumpus vs. Planter &c. 1 John. ch. ca. 213; Abbott vs. Allen, 2 John. ch. ca. 519; Miller vs. Long, 3 Marsh. 336, were decided on this principle. The decree for rescinding the contract js erroneous and unwarranted.
puro¿aser a¡, jowed an iñ-' junction a-Ifent for balance of the purchase J^damao-es by the breach of the war-™¡)^antorbe-ingSnsolyent.
But the case, as it now appears before this court, is not in an attitude which will enable the court to make or direct a final decree,
Although there is no ground for rescinding the contract, yet if the lot sixty-four be actually allotted to Johnson’s heirs, as alleged, and that partition, as made by the commissioners, is confirmed by the court, and a decree th'ereon ipade final, then a? to lot sixty-four, the covenant of warranty, is in equity, so broken, as that the complain’Sht, by reason there,of, and of the insolvency of Rawlins, js entitled to retain so much of the purchase money, as js equal to the value of lot sixty-four. A court of law would assess damages pro tanto; a court of equity will do the same under the circumstances, and set it off against so much of the purchase money yet unpaid, Rawlins is insolvent; Craig has bound himself and his heirs to warranty. But the consideration paid Hobbs and Rawlins to Craig, is far short of that agreed for between Timberlake and Rawlins; Hobbs js not bound to Timberlake by warranty. -The con. *234 sideration and interest, is the measure oí compensation against Craig’s heirs, by reason of the warranty of their ancestor. Timberlake, therefore, lias a right to retain so much of the purchase money as will equal the value of lot sixty-four, if lost by decree in the suit.
That the judgment wa? recovered in snch case by assignee of ee obligation, without Sot'change* •the case,
Mandate for a fact left certain in the ascertained*3 on the return of the cause,
That the notes are assigned away makes no obsfa-de. The assignees stand in the place of the assignor, by the provisions of the statute, under which they were authorized to take the assignment. They are jn n0 footer condition by reason of their plea, that they paid a valuable consideration for the assignments. The equity set up by Timberlake, as to lot ,&4; qf lost by decree) is connected with, and grows .out °f the original contract; it followed the notes given for the lots into the hands of the assignees, and they took the assignments subject to it; whether they had notice or not, or paid a valuable consideration or not, does not alter the equity; they stand as Rawlins as to an equity like this.
If it be true, as alleged, that the lot sixty-four is 3osl by a decree, in the suit by Hughes’ heirs vs. heirs and others, pronounced by the court in which this suit was brought, as referred to in the the fact can be ascertained when this cause goes back. To prevent any future misapprehension, it is to be remarked that Timberlake, in his original bill, assumes Lewis Craig as vendor and warrantor, and attempts to measure his loss by what may or may not fall to the share of Lewis Craig in the division. John Craig is the vendor and war-rantor; Lewis Craig was the attorney in fact of John Craig, and conveyed (in that .character) the title of John Craig. If Lewis Craig then had a title, he was bound to have disclosed it, and cannot set it up in opposition to the deed, made by him to Rawlins, jn the name of John Craig. Lewis Craig is also one of the heirs of John Craig. Timberlake, therefore, cannot lose by allotment to Lewis Craig, whether as heir or as purchaser, nor to any of the other heirs of John Craig,
• -It seems to this court, that there .was no fraud, no concealment, nor any discovery of latent defect of *235 title not known to the purchaser at the time he accepted tiie deed with covenant of warranty; that the difficulties suggested by the bill, can give no foundation for relief, by rescinding the contract; and, therefore, that the decree to that effect is erroneous; but if any eviction, or actual loss of the lot 64, or of any of the lots purchased by Timberlalce of Rawlins, has been ascertained by the decree made in the suit referred to in the bill, to that extent, the complainant is entitled to relief, for the value of such actual loss, as coining within the covenant; and has an equity to retain it out of the pu-chase money in arrear. It is, therefore, ordered and decreed, that the decree of the circuit court be reversed, and that the cause be remanded, for such farther proceeding as accords with the principles of the opinion of this court, expressed, and as equity shall require.
Denny and Triplett, for plaintiffs; Mayes, for defendant.
Defendants to pay costs in this court.